(December 17, 1894.)

## WILLMAN v. FRIEDMAN.

[38 Pac. 937.]

ATTACHMENT—CROSS-COMPLAINT.—Plaintiff sued out writ of attachment at time of filing his complaint, which writ was on motion of defendant dissolved, as having been wrongfully issued. Defendant then answered original complaint, and at same time filed cross-complaint setting up claim for damages by reason of the wrongful issuance of the writ of attachment. *Held,* that

damages arising from the wrongful issuance of the attachment were proper matter for cross-complaint.

APPEARANCE.—A party who has appeared generally by demurrer cannot afterward raise the question of a want of service.

(Syllabus by the court.)

APPEAL from District Court, Alturas County.

A. F. Montandon, (J. J. Burt, of Counsel), for Appellant.

The following is the confused state of the California decisions: *Hess v. Sparks,* 15 Cal. 186, holds that the interest remaining in vendor, where title has not passed, as a vendor's lien. (Query, Is the title merged?) *Hill v. Grigsby,* 32 Cal. 55, following in the line of *Hess v. Sparks,* though regretting it, holds that there is a vendor's lien where title has not passed, and dissolves an attachment. *Porter v. Brooks,* 35 Cal. 199, holds that a vendor's lien will not dissolve an attachment where title has passed. *Gessner v. Palmateer,* 89 Cal. 91, 96, 24 Pac. 608, 26 Pac. 789 holds, in the first opinion, that, where title has not passed, an assignment of the note cannot convey the title to the assignee, and that therefore the attachment should not be dissolved; and in the second opinion, that the assignment of the note does convey the title to the land, and that, therefore, the attachment should be dissolved. *Hoffman v. Remnant,* 72 Cal. 1, 12 Pac. 804, holds that where the title is reserved and all of the installments are not paid, ejectment is the proper remedy. This is opposed to the idea of a vendor's lien, because such liens do not support ejectment, but are foreclosed. *Brennan v. Swasey,* 16 Cal. 140, 76 Am. Dec. 507, holds that a mechanic's lien does not prevent attachment. *Lankershin Ranch Land Co. v. Herberger,* 82 Cal. 600, 23 Pac. 134, holds that attachment is proper for installments of stock. If a man brings an action for $500 and recovers judgment for only half of the amount the attachment issued for, the whole amount still protects him for the amount he recovers, as it justly should. Why should it not protect him here for the amount held unsecured? (*Levy v. Willman,* 7 Ga. 167; *Danforth v. Carter,* 1 Iowa, 546; *Dawson v. Brown,* 12 Gill & J. 53; *Boarman v. Patterson,* 1 Gill, 372; *Gross v. Goldsmith,* 4 Mackey, 126; *Giddens v. Bolling,* 93 Ala. 92, 9 South. 427.)

Texas Angel, Arthur Brown, and P. M. Bruner, for Respondent.

This is an appeal from a proceeding under section 4322 of the Revised Statutes of Idaho. The appeal is ineffectual and nugatory, because it does not profess to set out what has transpired on that trial. It is no more proper to discuss the issues and the result, and the final order of discharge, than it would be to discuss the proceedings in an ordinary action of *assumpsit*, wherein the plaintiff had alleged an indebtedness and the defendant had denied it, and the proceedings had on the trial had been omitted, and were not reported by the bill of exceptions. A. F. Montandon makes an affidavit that the defendant is indebted to the plaintiff in the sum of $4,661 over and above all legal setoffs, etc., that the same is now due, and that the payment of the same is not secured by a mortgage, lien or pledge upon real or personal property. What sum? Why, the $4,661. It was a falsehood when it was made; it was known to be a falsehood; it was a palpable abuse of the writ of the court, issued under the pretense that there was that much due. Mr. Montandon now claims because there was $267 due the attachment should stand and he be allowed to ruin the business of this defendant. Having made this false affidavit that $4,661 was due, when he knew that there was but $267 due without security, a bond is provided in the magnanimous sum of $300 to secure the defendant against the ruin of his business and property. That bond does not conform to the statute. It follows an old California blank. The statute requires that in case the attachment be wrongfully issued, among other conditions, the plaintiff will pay all damages which he may sustain by reason of the attachment. That clause is nowhere to be found in the bond. The bond of course is but a part of the general system of fraud involved in this case. It was a fraudulent abuse from beginning to end of the process of attachment, begun with a false affidavit, followed by a bond that does not conform to the statute, and the entire property of the defendant was attached in fraud of his rights, and for the purpose of ruining him, and for no other purpose.

HUSTON, C. J.—This action was originally commenced by the plaintiff to recover certain sums of money alleged to be due to him from the defendant, and evidenced by certain instruments in writing. On filing his complaint, plaintiff caused an attachment to be issued and served upon defendant, who was at the time engaged in the business of general merchandising in the town of Hailey, Alturas county, Idaho. Defendant moved the district judge for the dissolution of the attachment, upon the ground that it was wrongfully issued, which motion was allowed by the district court; and from this action of the district court an appeal was taken to this court, when the action of the lower court was affirmed, and the cause remanded for further proceedings. (See 3 Idaho, 737, 35 Pac. 37.) Thereupon the defendant filed his answer to the complaint of the plaintiff in the district court, and at the same time filed a cross-complaint, setting up, by way of counterclaim, the wrongful issuance of the attachment aforesaid, and alleging damages by reason thereof, and asking affirmative relief therefor. Upon the filing of defendant's answer and counterclaim, plaintiff made application by petition to this court for a writ of prohibition forbidding the district court from receiving or entertaining said cross-complaint in said action, which petition was denied by this court. (See ante, p. 209, 35 Pac. 692.) Thereupon said cause came on for trial before said district court, with a jury, which trial resulted in a verdict and judgment in favor of defendant, from which judgment this appeal is taken.

Plaintiff filed demurrer to the cross-complaint of defendant, which was overruled by the court. Thereupon plaintiff moved to strike out the cross-complaint of defendant, which motion was refused by the court, and thereupon plaintiff filed his answer to defendant's cross-complaint. There is no assignment or specification of errors in the record or in the brief of counsel other than appears in the bill of exceptions. The contention of appellant would seem to be that the district court erred in overruling plaintiff's demurrer to the cross-complaint of defendant, and also in refusing plaintiff's motion to strike out said complaint. It is also contended by plaintiff that there was no personal service of the cross-complaint upon the plaintiff.

Section 4188 of the Revised Statutes of Idaho provides as follows: "Whenever the defendant seeks affirmative relief against any party, relating to or depending upon the contract or transaction upon which the action is brought, or affecting the property to which the action relates, he may, in addition to his answer, file at the same time, or by permission of the court subsequently, a cross-complaint. The cross-complaint must be served upon the parties affected thereby, and such parties may demur or answer thereto as to the original complaint." Plaintiff commenced his action by filing complaint, and at the same time issuing attachment. Before answer or demurrer by defendant, the latter moved to dissolve the attachment, upon the ground that it was wrongfully issued and served, and this motion was sustained and allowed. Thereafter defendant filed his answer to plaintiff's complaint, and at the same time filed his cross-complaint, asking affirmative relief in damages alleged to have been sustained by him by reason of the wrongful issue of said attachment. The answer and cross-complaint were duly served upon the attorney of the plaintiff, who had appeared in the action, and said attorney filed his demurrer to the answer and cross-complaint, and motion to strike out said cross-complaint. The filing of the demurrer was, if any further appearance was necessary, an appearance by the plaintiff so far as the cross-complaint was concerned. (Idaho Rev. Stats., sec. 4892.) It is true plaintiff assumes when he files his "answer to the so-called cross-complaint," as he terms it, to make a special appearance, but he had already appeared generally by filing his demurrer to and motion to strike out the cross-complaint. The court, having acquired jurisdiction of the parties and the subject matter, will proceed to determine all questions involved. "The court may determine any controversy between parties before it when it can be done without prejudice to the rights of others, or by saving their rights." (Rev. Stats., sec. 4113.) The purpose of the code is not only to simplify proceedings, but to avoid, as far as may be, a multiplicity of suits.

The appellant has cited various authorities in support of his contention that the cross-complaint filed in this action did not state a cause of action proper to be set up in the cross-complaint, and it is upon this question that the whole case depends. This

question is one which depends largely, if not entirely, upon statute; and, before my decision can be said to be strictly in point, it must appear that it was made under a statute similar to our own. In *Conner v. Winton,* 7 Ind. 523, cited by appellant, A brought action against B to recover a sum of money deposited by A with B, which B refused to deliver on demand. B alleged, by way of counterclaim, that A had falsely charged him with stealing the money deposited, whereby he had sustained damages, etc. It was held no counterclaim; but the court, in its opinion in that case, makes a clear distinction between it and a case like the one at bar. In *Bank v. Morris,* 13 Iowa, 136, the court held that the defendant in an attachment suit may, by way of counterclaim or cross-demand, recover in the principal action for damages sustained by reason of the wrongful suing out of the writ. In *Reed v. Chubb,* 9 Iowa, 178, the court held that "where, however, the affidavit for attachment and the bond are filed, and the writ sued out, at the commencement of the action, if the writ is wrongfully sued out, any damages sustained by the defendant therefrom constitute a 'claim held by him at the commencement of the suit,' in such a sense that the same may be set off against the plaintiff's demand in the same action. He need not wait until the principal suit is determined, before bringing suit on the attachment bond." To the same effect is the case of *Stadler v. Parmlee,* 10 Iowa, 23, also, cited by appellant. The case of *Waugenheim v. Graham,* 39 Cal. 169, is, we think, directly in point, and in that case the court holds unequivocally, upon a statute almost identical with that of Idaho, that the damages claimed by reason of the wrongful issuance of an attachment are proper matter for cross-complaint in the original action. We are unable to discover any merit in the exceedingly fine distinctions insisted upon by counsel for appellant between the cases we have quoted and the case at bar. The cause of action set forth in the cross-complaint arose out of the transaction which forms the basis of appellant's action, and was, under our statutes, entirely proper to be so presented to the court, in that form. The judgment of the district court is affirmed, with costs.

Morgan and Sullivan, JJ., concur.