(February 29, 1904.)

## McCORNICK v. FRIEDMAN.
[76 Pac. 762.]

ASSIGNMENT OF CAUSE OF ACTION FOR DAMAGES—STATUTE OF FRAUDS.

1. When action is brought by W. against F. and attachment is issued against the property of F., and F. sets up by cross-complaint a claim against A. for damages resulting from the wrongful issuance of such writ of attachment, and F. assigns for a consideration already paid to C. any judgment that he may recover in such action, such assignment is valid, and does not come within the statute of frauds.

(Syllabus by the court.)

APPEAL from District Court, Blaine County. K. I. Perky, Judge.

Action by W. S. McCornick against S. M. Friedman and others.

Judgment for defendant from which plaintiff appeals. Judgment affirmed.

The facts are stated in the opinion.

Pierce, Sullivan & Sullivan, for Appellant.

There are only two important questions of law in this case. All of the exceptions can properly be discussed under these two points: 1. On the tenth day of May, 1893, S. M. Friedman paid the full consideration for the deed of the property from Alexander Willman. He then became the legal and equitable owner of the property. Our judgment became a lien thereon as soon as it was entered, December 7, 1893. 2. All of the evidence of an agreement between S. M. Friedman and Henry Cohn is within the statute of frauds, because it was an attempt to show a contract between said Friedman and Cohn for the disposition of real estate, or an interest therein. In some of the cases it seems to be assumed that a second delivery is necessary upon the happening of the event, or the performance of the condition, to vest the title in the grantee. But we can see no good reason why the deed should be actually turned over to the grantee before his title is complete. The grantor has parted with all control and dominion over the deed, and he can have no right to direct the withholding of the deed from the grantee; and if the latter has performed the condition upon which delivery to him was to be made, it seems to us that it is immaterial, except as to a question of evidence or notice, whether the deed is actually delivered to him or not. (1 Devlin on Deeds, 2d ed., sec. 331.) But while delivery is essential to render the deed effectual at law, it is in fact the performance of the conditions that imparts life and validity, and for this reason equity regards the title as vesting in the grantee whenever this has been done. (Warvelle on Vendors, 515; *Prutsman v. Baker,* 30 Wis. 648, 649, 11 Am. Rep. 592; 11 Am. & Eng. Ency. of Law, 2d ed., 345, 346.) An escrow takes effect instantly upon the performance of the condition without any formal delivery over by the depositary. (*Couch v. Meeker,* 2 Conn. 302, 7 Am. Dec. 274; *Davis v. Clark,* 58 Kan. 100, 48 Pac. 563; *Regan v. Howe,* 121 Mass. 424; *Lessee of Shirley v. Ayres,* 14 Ohio 307, 45 Am. Dec. 546; *White Star etc. Co. v. Moragne,* 91 Ala. 610, 8 South. 867; *State Bank v. Evans,* 15 N. J. L. 155, 28 Am. Dec. 400; *Cannon v. Handley,* 72 Cal. 140, 141, 13 Pac. 315; *Hughes v. Thistlewood,* 40 Kan. 232, 19

Pac. 629.)    The evidence given by Henry Cohn of an agreement between himself and Friedman is within the statute of frauds, and should have been rejected.    If it is an attempted agreement to transfer to Cohn the real estate, it is void under the statute of frauds.    It is an oral promise to convey real estate or an interest therein.    Under the statutes of Idaho a verbal contract for the sale or transfer of real estate is not admissible in evidence against a stranger to such contract. (*McGinness v. Stanfield,* 6 Idaho, 372, 55 Pac. 1020; *Smith v. Burnham,* 3 Sum. 435, Fed. Cas. No. 13,019.)    Where plaintiff executed and delivered to defendant a deed of certain land, the legal title passed, although it was intended by both parties that the deed should not take effect until the defendant made a sale of the land for plaintiff, but the equitable title still remained in plaintiff, and a subsequent oral sale thereof to defendant was within the statute of frauds and void, and in an action for the balance of the purchase money a demurrer to the petition was properly sustained.    (*Darling v. Butler,* 45 Fed. 332, 10 L. R. A. 469; *Holmes v. Holmes,* 86 N. C. 205; *Clitus v. Langford* (Tex. Civ. App.), 24 S. W. 325.)

Lyttleton Price, for Respondent.

The defense in this action is that Emil M. Friedman, of Salt Lake, is the owner of the premises by purchase through mense conveyances from Alex Willman, and the deeds showing a perfect deraignment of title from Willman through S. M. Friedman to Cohn, and from Cohn to Emil M. Friedman, are in the evidence.    No fault is found with this deraignment except, as above stated, that the legal title passed from Willman to Cohn subject, as contended, to the lien of appellant's judgment upon a title asserted to have fallen to Friedman in consequence of the Willman suit.    This question is fairly presented, and it is the only one in the case.    It involves two points: 1. Is the agreement between Cohn and Friedman, by which Cohn assumed and bore the burdens of the litigation with Willman, to take its fruits and pay Friedman's debt to him, fought by him to a successful issue and the proceeds applied to the payment of that debt, a parol transfer of lands and void under the stat-

ute of frauds? And 2. Did Willman's title become vested in Friedman upon the levy of the wrongful attachment or at any other time as a legal consequence of the unlawful attachment or the result of the litigation, or the escrow agreement, or, of all together? No point is made as to the effect of the legal title passing into the name of S. M. Friedman when the escrow deed was taken down on Willman's order and delivered to Cohn, nor no question as to the creation of a trust in the property as such, in Friedman for the benefit of Cohn. The action is purely a suit in ejectment. It was tried as such as the record fully disclosed. No issue in equity was tried and no equitable principle invoked by either side. As tried, it was strictly and technically a law case, and as presented here as to all points raised, it is the same. It was not a case for submission of special issues to the jury, and if it were, appellant was given an opportunity at the opening of the trial to have them presented, where appellant's counsel "objected to the introduction of any evidence under the equitable defense set out by the defendants if the action is to be tried by a jury." The cause was tried by a jury, with one special finding as to rental value at appellant's request, and no evidence upon any equitable defense was offered. The lien of a judgment attaches to the precise interest or estate which the judgment debtor has, actually and effectually, in the land. By this is meant that, as the recovery of a judgment against him cannot of itself operate to change the quantity of his interest in the property, so its lien cannot be made effectual to bind or convey any greater or other estate than the debtor himself, in the exercise of his rights, could voluntarily have transferred or alienated. (Black on Judgments, par. 420.) Appellant has no title from this source. The utmost that could be claimed for him would be that he succeeded to Friedman's equity. This will not support ejectment. Friedman had no interest in the land. He never had the legal title and he had at this time parted with his equity. He was a "mere conduit" of the title. (Black on Judgments, 421.)

STOCKSLAGER, J.—This is an appeal from the final judgment of the district court, fourth judicial district, Blaine county. Plaintiff's action was in ejectment to recover lot 1,

block 41, town of Hailey, basing his right to recover upon exe-
cution sale upon a judgment of the fourth judicial district
court entered and docketed of the seventh day of December,
1893, in favor of the *Salt Lake Milling and Elevator Company
v. S. M. Friedman.* Plaintiff received the sheriff's deed on the
eighth day of April, 1899. Plaintiff also claims mesne profits
from the date of his deed. The defendant S. M. Friedman
disclaimed any and all interest in the premises described in the
complaint. Defendants Henry M. Cohn and Emil H. Friedman
answered denying that on the seventh day of December, 1893,
or at any time prior thereto, or thereafter, S. M. Friedman was
the owner of the property in controversy, and aver that on the
thirteenth day of December, 1895, defendant Cohn was the
equitable owner of said real estate, and that defendant S. M.
Friedman, was the mere conduit through which title passed
from Alexander Willman to said Henry M. Cohn; defendant
S. M. Friedman only held the naked legal title, but in trust
for the real owner, Henry M. Cohn. That on the said thir-
teenth day of December, 1895, said title became cleared through
and by virtue of the financial aid and assistance of said Cohn,
and through negotiations made by said Cohn said title was then
transferred to the said defendant, S. M. Friedman, in trust,
however, for the said Cohn, and with the understanding and
agreement that the same should be immediately conveyed in
pursuance of the terms of said prior agreement of said S. M.
Friedman to said Cohn, and the same was immediately conveyed
by said S. M. Friedman to Cohn in pursuance of said prior
agreement. That afterward, and before the commencement of
this action, said Cohn for value by him received, by deed con-
veyed said premises to defendant, Emil M. Friedman, who is
now the lawful owner and entitled to the possession. That said
Cohn now has no interest or title to the property. That the
other defendants, the Hailey Mercantile Company and the
Friedman Company, Limited, never had any interest in or title
to said premises, except as lessees of said Cohn and said Fried-
man.

Defendants further answering say plaintiff and his prede-
cessors in interest never acquired any claim upon or interest in
or to said premises by virtue of the judgment or execution,

certificate of sale or sheriff's deed. Deny that plaintiff is entitled to the sum of $30 per month, or any sum whatever, from these defendants from the occupancy of said premises; deny that said deed of conveyance to Henry M. Cohn, and from him to Emil M. Friedman are or were subsequent to the alleged lien of said judgment mentioned in plaintiff's complaint, or that said defendants Cohn and Emil M. Friedman, or the other defendants, were fully or partially aware of any alleged lien or claim of the plaintiffs against said premises or have wrongfully withheld possession, etc.

A jury was impaneled to try the case, and the verdict was for the defendants. It is shown that a question was submitted to the jury, to wit:

"Gentlemen of the jury, at the request of the plaintiff, the court instructs you to answer the following question: What is the value of the rents, issues and profits of the property described in the complaint from April 8, 1899, to November 30, 1902? Answer: $30 per month.

"GEORGE H. CHOATE, Foreman."

Upon this verdict a judgment was entered for the defendants for their costs.

The facts in this case are so closely interwoven with a former action in the district court of Blaine, then Alturas county, that it seems necessary to relate some of them here.

Alexander Willman sold his mercantile business in the town of Hailey to S. M. Friedman; a part of the transaction was the proposed sale of the premises in controversy. Willman placed a deed in escrow with the First National Bank of Hailey for Friedman, to be surrendered to him upon the payment of five promissory notes aggregating about $4,500. The notes were given as evidencing the purchasing price of the property agreed to be paid as the purchase price of the property as shown in a contract accompanying the same. Before the maturity of the last two notes Willman commenced his action in the district court of that county, and by an affidavit that he had no security for the payment of the debt, procured an attachment and levied upon the goods and chattels of Friedman. This action

on the part of Willman resulted in many other actions against Friedman, among them the action of the Salt Lake Milling and Elevator Company, the party from whom plaintiff claims title, he having succeeded to the judgment of the S. L. Milling and Elevator Company. Friedman answered in the action of Willman and by way of cross-complaint claimed damages in the sum of $50. Upon the issues thus joined the case was tried with a jury and a verdict rendered in favor of the defendants as follows: "We, the jury in the above-entitled action, find for the defendant over and above the amount claimed in this action by the plaintiff, damages in the sum of $2,500." Upon this verdict a judgment was entered by the court in favor of the defendant against plaintiff in the sum of $2,500, and this judgment recites that the amount offset in the verdict for damages over and above the $2,500 is $4,943.62, the amount claimed to be due plaintiff from defendant. The demand of the defendant Friedman in his cross-complaint was for $50 damages which he claimed he sustained by reason of the wrongful attachment, destroying his business and ruining his credit in the business world. In other words, he did not ask that plaintiff be required to deliver the deed then in escrow as part of the damages; so far as the record in either case shows, Friedman was willing that Willman should take up the escrow agreement. (See *Willman v. Friedman*, 4 Idaho, 209, 95 Am. St. Rep. 59, 38 Pac. 937.)

These facts are related to show the reason for the alleged contract between S. M. Friedman and Henry M. Cohn. Cohn testifies that after the attachment proceeding he went to Hailey and in a conversation with Friedman, Friedman informed him he was a ruined man and that the only way Cohn could save himself was to furnish money to carry on the litigation on his cross-complaint for damages, and he would assign the cause of action to him, Cohn. This was agreed upon and thereafter Cohn assumed the payment of attorneys' fees and other costs and expenses and followed the case at his own expense to a final determination. Cohn testified that Friedman was at that time indebted to him $5,000 or more.

Thirty-seven errors are assigned, but an examination of this record leads us to the conclusion that the questions upon which this case must rest are: 1. Was the assignment of the supposed cause of action set out in defendant Friedman's cross-complaint in the action of *Willman v. Friedman* to defendant Cohn, and the judgment thereafter rendered in favor of said Friedman and assigned to defendant Cohn, valid? 2. Did the assignment of such claim and the judgment come within the statute of frauds?

Counsel for appellant insists that when Willman resorted to the attachment proceeding to recover the amount due him from Friedman he waived his right under his escrow agreement, and the title to the real estate in controversy vested in Friedman. We cannot give our assent to this proposition. There was never a time when Friedman could procure the deed without paying the obligation held by Willman. When the attachment was levied upon the property of Friedman it left him powerless to meet this obligation; neither Mr. Willman nor any of the creditors of Friedman treated the property in controversy as the property of Friedman, as no attachments were levied upon it. The escrow remained in the bank until turned over to Mr. Burt on the order of Mr. Willman on the thirteenth day of December, 1895. The letter and receipt are as follows:

"San Francisco, Dec. 5th, 1895.
"First National Bank of Hailey.

"Gentlemen: I hereby inform you of the fact that Mr. J. J. Burt, the bearer of this, is fully authorized by me to act for me and in my stead in all matters existing between you and me, especially in all matters pertaining to the transaction between S. M. Friedman and myself, and he is authorized to take down and deliver to Mr. Friedman, in case he sees fit to do so, the deed now held by you in escrow.

"Yours truly,
"ALEXANDER WILLMAN."

"Dec. 13, 1895.
"I have this day received from the First National Bank of Hailey, deeds from A. Willman to S. M. Friedman.

"J. J. BURT."

It will be seen that neither Mr. Willman nor Mr. Burt, his attorney, considered the property as belonging to Mr. Friedman on the thirteenth day of December, 1895, the day the deed was taken from the bank on the order of Mr. Willman, and the same day the deed from Friedman to Cohn was delivered, one immediately following the other, as shown by the record. When Friedman assigned the cause of action as set out in his cross-complaint, he assigned to Cohn only what the court might give him on a final determination of that issue. The jury that was impaneled to try that issue (with the other issue) were at liberty to say that defendant should recover so much as damages against the plaintiff without mentioning any amount due Willman. In that case, could it be said that Friedman or his assigns could demand the deed in escrow without paying the purchase price provided for in the contract? We think not. It was the result of the verdict of the jury that gave Willman the offset equal to the value of Friedman's agreed purchase price, and according to the uncontradicted evidence of S. M. Friedman and Henry M. Cohn, the consideration for the assignment had been paid prior to such assignment. Under these circumstances this case does not come under the statute of frauds.

Counsel for appellant assigns as error the ruling of the court on the admission of the evidence of Henry M. Cohn relative to his conversation with S. M. Friedman at the time of the assignment of his right to recovery on his cross-complaint. We see no error in this ruling. The thing assigned being of a doubtful character, based entirely upon what view a jury and the court might take of Friedman's demand against Willman, we can see no reason why his good faith in prosecuting this claim should not be shown.

It is urged that it was error to submit this case to a jury; the record shows that the case was tried in the lower court as a law case. The court permitted the plaintiff to submit one question to the jury, and that related to the value of the rents, issues and profits of the property for a given time; the general finding of the jury was that the plaintiff could not recover.

We find no error in any of the other rulings of the court as-

signed as error by appellant that would warrant us in disturbing the judgment.

The judgment is affirmed, with costs to respondent.

Sullivan, C. J., concurs.

(April 1, 1904.)

AILSHIE, J.—This case has a long and intricate history, as may be gathered from the opinion of Mr. Justice Stockslager. The original case, out of which all subsequent litigations grew, was that of *Willman v. Friedman*, 4 Idaho, 209, 95 Am. St. Rep. 59, 38 Pac. 937.

It seems to me that if the doctrine announced in that case is correct and to be accepted as the law of this state, to the effect that upon a suit to recover the purchase price of property a counterclaim or cross-complaint may be set up for damages caused on account of a wrongful attachment issued and levied to secure such purchase price, then the judgment in this case should be reversed. If the conclusion reached in the principal case be correct, it would logically follow that upon commencement of the action and issuance and levy of the attachment the vendor waived his right to demand or recall the escrow deed, and that, so far as he was concerned, the title at once vested in the vendee. There must also necessarily follow from the case the further conclusion that immediately upon the wrongful issuance and levy of the attachment the original debt sued upon became satisfied and liquidated to whatever extent such damages might be ascertained and established.

The lien of appellant's judgment would have, therefore, attached to the property and followed it until satisfied.

I make these observations because the opinion here seems to depart from the principle of the original case; but since it does not refer to or discuss that case, I refrain from further expression in the matter.