Argued October 11, reversed and remanded November 6, 1917.

# EVERDING & FARRELL *v.* GEBHARDT LUMBER CO.

### (168 Pac. 304.)

**Logs and Logging—Sale of Timber—Mutual Contracts.**

1. A contract for the purchase and sale of timber, defendant to have possession of the premises for the time stipulated for cutting and removing the timber, was mutual, and the placing of defendant in possession was not full performance on plaintiff's part; it being incumbent on him to permit defendant to continue in possession of the land.

> [As to remedies of party to contract on anticipatory breach, or prevention of breach, see note in Ann. Cas. 1913C, 384.]

**Contracts—Breach in Terminating—Right of Action.**

2. Regardless of whether the contract may be treated by the injured party as terminated by the breach, the breach thereof gives rise to a cause of action.

**Setoff and Counterclaim—Tort—Breach of Contract.**

3. When a tort arises out of the same transaction as plaintiff's cause of action and the proof of it tends to impeach the consideration of the contract sued on, it may be made available as a defense in an action of *assumpsit*.

**Pleading—Counterclaim.**

4. In an action to recover installments on a contract under which defendant was to have possession of the premises for the time stipulated for the removal of timber, defendant's answer, setting up that he had been dispossessed by a wrongful attachment when there was nothing due plaintiff, constituted a proper counterclaim within Section 74, subdivision 1, L. O. L., providing for a counterclaim for a cause of action arising out of the contract or transaction set forth on the complaint as a foundation of plaintiff's claim.

**Pleading—Objections—Striking Answer—Waiver.**

5. Defendant did not, by going to trial, waive his right to complain of the action of the court in striking out part of his amended answer, where it was stricken on plaintiff's motion, forcing defendant to go to trial.

**Pleading—Amended Answer—Effect.**

6. Former answers are no longer a part of the case after an amended answer is filed.

From Yamhill: HARRY H. BELT, Judge.

Department 2.   Statement by MR. JUSTICE BEAN.

This is an appeal by defendant from a judgment on a verdict in favor of plaintiff for $800, and $1,056, costs.

The action is for two payments due April 20, and May 20, 1915, upon a contract which is set forth as an exhibit to the complaint. This agreement was made August 20, 1912, by J. D. Welch, A. A. Welch, and W. F. Slaughter, as first parties, and defendant, as second party, for the sale of all the timber estimated to be ten million feet, standing upon certain tracts of land described therein, and owned by the first parties, for the sum of $12,000, payable as follows:

"Five Hundred Dollars ($500.00) in gold coin of the United States of America upon the execution and delivery of this agreement; Four Hundred Dollars ($400.00) on or before sixty (60) days after the date of this agreement, and Four Hundred Dollars ($400.00) on or before the 20th day of each and every month thereafter for the period of twenty-seven (27) months, and Three Hundred Dollars ($300.00) on or before twenty-nine (29) months from the date of maturity of the first installment mentioned, each of said deferred payments to bear interest from sixty (60) days after the execution of this agreement at the rate of six (6) per cent per annum and payable at maturity thereof respectively."

The contract provided, among other things:

"The second party shall be entitled to possession of said premises for the purpose of cutting and removing the timber therefrom, and shall keep an account of the amount of timber B. M. cut and removed from said land, and if it shall cut and remove during any month of the life of this contract over 400,000 feet B. M. then and in that event, in addition to the payment of the installment of four hundred dollars ($400.00) becoming due as hereinbefore provided the second party shall pay the first parties at the time of the payment of such installment, a sum equal to One and 50-100 Dollars ($1.50) for each 1,000 feet B. M. cut and removed from said land during such month in excess of 400,000 feet B. M., all sums however, paid

hereunder to be credited on the purchase price of said timber, and applied to the installment then due or next becoming due.

"The parties hereto shall select a competent cruiser satisfactory to them, who shall ascertain the amount of merchantable timber on said land, B. M., and in case such cruiser shall determine that there is less than 10,000,000 feet B. M., of timber on said land, then and in that event, the purchase price hereinbefore mentioned shall be reduced to one and 20-100th Dollars ($1.20) for each 1,000 feet B. M., of timber on said land less than 10,000,000 feet B. M., as determined by said cruiser. But in no case shall the purchase price to be paid or received hereunder be in excess of twelve thousand dollars ($12,000.00)."

The agreement stipulates that in case the market price of railroad ties shall decrease during its continuance below $9 per M. feet B. M., the second party shall not be required to operate its mill, and in that event provides for certain extensions of the time for payment of installments of the purchase price of the timber, not to exceed in the aggregate one year; and then covenants as follows:

"The party of the second part shall have five (5) years from the date of this agreement, within which to cut and remove the timber from said land; * * and that as soon as the timber shall be cut and removed from any legal subdivision of said land, the first parties, their heirs or assigns, shall be entitled to possession of such subdivision, subject only to the right of the second party to use the same for roads and logging roads, and for building sites, yards, ponds and land necessarily used in connection with the operation of its mill, or in hauling logs from any of the lands hereinbefore mentioned."

It was agreed that if the second party, or its assigns, failed to cut and remove the timber from any

86 Or.—16

legal subdivision of the land within three years from date of the agreement, it should pay the taxes thereafter levied on the described land until the timber should be cut; that the first party was to furnish and cause to be conveyed to the second party a right of way for road purposes over certain other lands. The sawmill was to be installed on or near the land without unnecessary delay and not removed until the price of the timber should be paid or the contract fulfilled. Other details not necessary to mention were stipulated in the contract.

It is alleged in the complaint that the agreement was assigned to plaintiff by W. F. Slaughter, J. D. Welch and A. A. Welch on November 12, 1913; that they and the plaintiff herein have performed all the terms and conditions of the contract on their or its part to be performed; that under the terms thereof it is determined that 10,000,000 feet of timber, board measure, was on the land at the time of the sale; and that under and by virtue of the terms of said agreement to wit, Exhibit "A," there became and is due from the defendant payments thereon at the rate of four hundred dollars per month for two months commencing April 20, 1915, together with interest thereon at the rate of six per cent per annum from April 9, 1915. It is also alleged that 150,000 feet of timber in excess of 400,000 feet per month had been cut, for which the sum of $4,056 is demanded.

Defendant answered and admitted the incorporation of plaintiff and defendant and the execution of the contract. It denied the other allegations of the complaint and pleaded affirmatively to the effect that on April 14, 1915, in violation of the contract, the plaintiff wrongfully dispossessed the defendant of the land,

and prevented it from operating its sawmill and from
cutting and removing the timber; that at the time the
defendant was engaged in the lumber and logging busi-
ness and filling outstanding contracts for lumber to
be cut from the timber on the property covered by
the contract of plaintiff; that by means of a wrongful
and unlawful attachment proceeding, the details of
which are set forth, and when there was nothing due
from defendant under the contract, and plaintiff had
no reasonable cause to believe there was anything due,
plaintiff wrongfully took possession of the land and
of defendant's sawmill and equipment, of 300,000 feet
of cut timber and of 100,000 feet of logged lumber on
the land described in the contract to defendant's dam-
age in the aggregate sum of $1,990.00; that in June,
1915, the action in which the attachment was made was
tried and judgment rendered in favor of defendant dis-
missing the action and dissolving the attachment, for
the reason that there was nothing due upon the con-
tract from defendant; that by virtue thereof the de-
fendant was prevented from carrying out the contract.

In the second amended answer the attachment pro-
ceedings and the levy upon the property thereunder
were pleaded as a first, further and separate answer
and defense, and as an estoppel. As a second further
and separate answer the attachment proceedings and
the allegations of the manner in which the defendant
was damaged were set forth. Plaintiff moved to
strike the further and separate answers for the rea-
son that it had already been determined by the court
upon demurrer that they constituted no defense. This
motion was granted and the new matter of the answer
stricken out.          .          REVERSED AND REMANDED.

For appellant there was a brief over the name of *Messrs. Joseph & Haney,* with an oral argument by *Mr. Bert E. Haney.*

For respondent there was a brief over the names of *Mr. J. Bruce Polwarth, Messrs. Crumpacker & Coovert* and *Messrs. Magill, McKenney & Brush,* with oral arguments by *Mr. W. F. Magill* and *Mr. Polwarth.*

MR. JUSTICE BEAN delivered the opinion of the court.

1. The main question for determination in this case is whether or not the facts alleged in the second further and separate answer constitute a counterclaim or defense or partial defense to the plaintiff's complaint so that the same should not be stricken out. It is immaterial by what means or process the plaintiff obtained the possession of the property described in the contract, if by so doing it breached the contract. It will be noticed that the condition specified therein is that the defendant company shall be entitled to the possession of the premises for the purpose of cutting and removing the timber therefrom. It is the contention of counsel for the plaintiff that when the contract was executed and delivered to the defendant and it was placed in possession of the premises, plaintiff's part of the contract was performed and that defendant is not entitled to set up a wrongful attachment in the prior action as a counterclaim. Whatever might be considered if the attachment proceedings were entirely separate and distinct from the contract, it seems to us that in order to carry out the stipulations of the agreement it is incumbent upon the party executing the same, or its assignee, to permit the defendant to continue in the possession of the land in order to cut the timber therefrom. The contract is mutual. Upon

the one side the first party agrees to sell about ten million feet of timber to the second party who agrees to pay therefor $12,000, or $1.20 per thousand feet in case there shall not be found that amount of timber on the land.   Each party by its pleading accuses the other of violating the contract.   While the answer, particularly the second separate and further answer, is not a model pleading, it alleges a breach of the contract in question on the part of the plaintiff and that by reason thereof the defendant is damaged in the amount named.

2, 3.   Regardless of whether the contract may be treated by the injured party as terminated by the breach, the breach thereof gives rise to a cause of action: 6 R. C. L., § 389, p. 1032.   When a tort arises out of the same transaction as plaintiff's cause of suit and the proof of it tends to impeach the consideration of the contract sued on, to meet and repel the allegations of the complaint in whole or in part, it may be made available as a defense in an action of *assumpsit:* 2 R. C. L., § 28, p. 772.

In *Willman* v. *Friedman,* 4 Idaho, 209 (38 Pac. 937, 95 Am. St. Rep. 59), at the time the defendant filed the complaint he sued out a writ of attachment which on motion of defendant was dissolved as having been wrongfully sued out.   The defendant then answered the original complaint and at the same time filed a cross-complaint setting up the claim for damages by reason of the wrongful issuance of the writ of attachment.   It was held that the cause of action set forth in the cross-complaint arose out of the transaction which formed the basis of the action: See, also, as somewhat in point, *Waugenheim* v. *Graham,* 39 Cal. 169, 177.

Section 74, L. O. L., requires that the counterclaim mentioned in Section 73 which may be contained in the answer,

"Must be one existing in favor of a defendant, and against a plaintiff, between whom a several judgment might be had in the action, and arising out of one of the following causes of action: (1) A cause of action arising out of the contract, or transaction set forth in the complaint, as a foundation of the plaintiff's claim. (2) In an action arising on contract, any other cause of action arising also on contract, and existing at the commencement of the action. The defendant may set forth by answer as many defenses and counterclaims as he may have. They shall each be separately stated, and refer to the causes of action which they are intended to answer, in such manner that they may be intelligently distinguished."

Subdivision 1 of Section 74 provides for two classes of counterclaims, namely: (1) A demand existing in favor of the defendant and against the plaintiff which arises out of the contract upon which the plaintiff has based his cause of action: (2) a demand, so existing, which arises out of the transaction, a broader term than contract, upon which the plaintiff has based his action. Mr. Bliss in his work on Code Pleading, commenting on the first class, uses the following language:

"Under the first class, the original action being based upon a contract, if the plaintiff is liable, at the suit of the defendant, in respect to the same contract, the latter may present his demand by way of counterclaim. This covers, as we have seen, what was known as recoupment, and by the terms of the statute extends to equitable demands. Questions of difficulty will seldom arise in respect to this class, as it is easy to determine whether the defendant's demand arises out of the contract in suit. Thus, in an action to recover the rent stipulated in a lease, the defendant may present a counterclaim based upon a breach, on the part of the plaintiff, of other provisions in the same lease": Section 371.

4. In the case at bar the contract is in the nature of a lease and sale of standing timber. The second further and separate answer constitutes a counterclaim coming within the first class provided for in Section 74, L. O. L., and is in accordance with the principle announced in the cases of *Chance* v. *Carter,* 81 Or. 229 (158 Pac. 947), and *Zigler* v. *McClellan,* 15 Or. 499, 502 (16 Pac. 179).

Under the terms of the agreement the defendant was entitled to the possession of the premises for the full time stipulated, if necessary, for the purpose of cutting the timber upon the conditions named in the contract. This time had not expired and the timber was not all cut when, as the defendant alleges, the plaintiff wrongfully took possession of the land and property and prevented the defendant from further proceeding to carry out the contract and obtain the benefits of its purchase. The contention of plaintiff that the contract was fully performed on its part when the property was turned over to defendant in 1912, and there was nothing more for it to do, would, when taken into consideration together with the facts set forth in the second affirmative defense, lead to the conclusion that the plaintiff, or its assignor, during the first month or year after the defendant had so taken over the property, could have wrongfully retaken possession of the premises and prevented the defendant from cutting the timber. The allegation of plaintiff's complaint that the plaintiff and its assignors had ''performed all the terms and conditions of said contract on their or its part to be performed'' recognizes the law of this case, and must necessarily mean that the defendant had been permitted to retain possession of the land and had not been prevented by plaintiff from

·cutting the timber as stipulated. Any other construction of the contract would permit the first parties thereto or their assignee to make any number of successive sales of the standing timber as often as they could wrongfully oust the purchaser from the premises and prevent him from cutting the timber. In other words, defendant asserts that plaintiff has wrongfully prevented it from obtaining a portion of the timber purchased which it was agreed defendant should have the privilege of. cutting and removing from the land during a period of five years; that thereby plaintiff has violated the contract and the defendant has been damaged in a certain sum. We think the defendant should have been allowed to plead and prove the matter set forth in the affirmative answer and that it was error to strike out the same. At the oral argument counsel for plaintiff conceded that the matter referred to should not have been stricken out if it constituted a defense. It is contended by defendant that the complaint is insufficient in not alleging that the amount claimed had not been paid and no demand was made for costs. We pass this as it is believed that both the complaint and answer will be amended before another trial.

The answer is not as definite and clear as it might be in the assertion of the breach of the contract on the part of the plaintiff. Some of the material matters set forth as having been found or adjudged by the court upon the trial of the former action are not alleged as positive facts. Nevertheless, the answer shows a breach of the contract on the part of the plaintiff causing the defendant damages in a specified amount.

The general rule is stated thus in 9 Cyc., p. 635:

"The breach of a contract by one of the parties gives to the other a right of action for the injury suffered by

him from such breach, but it does not in all cases discharge him from performance on his part. The contract may be broken wholly or in part, and if in part the breach may or may not be sufficiently important to operate as a discharge; or if it is of such importance the injured party may choose not to regard it as a discharge, preferring to continue to carry out the contract, reserving to himself the right to sue for such damages as he may have sustained by the breach. It is often very difficult to determine whether or not a breach of one of the terms of a contract discharges the party injured.''

It does not appear that an estoppel is pleaded by the defendant or that it has been discharged from performance of the contract on its part or that the same has been rescinded. Some of the facts set forth in the so-called plea of estoppel may be material in order to show a breach of the contract by the plaintiff, and resulting damages. For a complete discussion of the question of estoppel, we refer to the language of Mr. Justice MOORE in the case of *Stamm* v. *Wood, ante,* p. 174 (168 Pac. 69), which is applicable to the case at bar.

5, 6. It is contended by the plaintiff that the defendant waived its right to complain of the action of the court in striking out part of the amended answer by electing to go to trial. It is apparent that the defendant was forced to go to trial. Plaintiff made this election and not the defendant. If it had omitted to plead the new matter in its second amended answer, then the question of waiver would have been presented. It is unnecessary to consider the former answers. They are no longer a part of the record: *Wells* v. *Applegate,* 12 Or. 208 (6 Pac. 770)

The judgment of the trial court is reversed and the cause remanded for a new trial, with leave for each party to apply to amend its pleading.

REVERSED AND REMANDED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE MOORE and MR. JUSTICE MCCAMANT concur.