[Civ. No. 1795.   Third Appellate District.—February 7, 1918.]

P. J. VAN LOBEN SELS, Appellant, v. PRODUCERS FRUIT COMPANY (a Corporation), Defendant and Respondent; TIN SAN, Intervener and Respondent.

CONTRACT—LEASE OF FARM LAND—DISPOSITION OF PROCEEDS—CONSTRUCTION OF INSTRUMENT.—Under a lease of farm land providing that the lessee might sell the crops raised on the premises, but that the returns for the same should be made directly to the lessor, upon receipt of which the lessor would place the said amounts to the credit of the account of the lessee, and further providing that the

lessee mortgaged to the lessor the crops as security for the perform-
ance by the lessee of the conditions of the lease, the lessor is not
invested with the ownership of the proceeds, but at the most is
given the right to handle the money and place the amount received
to the credit of the lessee, and is therefore not damaged by reason
of the failure of the party which marketed the crops to pay over
moneys to him, even though such party had knowledge of the terms
of the lease.

ID.—ERADICATION OF JOHNSON GRASS.—Under a covenant in a lease of
farm land providing that the lessee would annually, and at the
proper seasons, in a husbandlike manner, properly prepare and ren-
der fit for cultivation all of the land, tend and cultivate the same
in a first-class manner, harvest the crops, and keep all the edges of
the ditches, sloughs, roads, or any other lines of boundaries of the
land clean of weeds and brush, it was not incumbent upon the lessee
to eradicate certain Johnson grass standing and growing upon the
premises, where such grass was growing upon the land when the
lessee took possession and for several years prior thereto, and no
express mention of such grass was made in the lease.

PLEADING—INTERVENTION—TIME.—Under section 387 of the Code of
Civil Procedure, an intervention made prior to the trial of any issues
of fact, before the cause had been set for trial, and which does not
materially delay the hearing, was within time.

APPEAL from a judgment of the Superior Court of
Sacramento County.   Charles O. Busick, Judge.

The facts are stated in the opinion of the court.

A. L. Shinn, C. L. Shinn, and G. Shinn, for Appellant.

White, Miller, Needham & Harbor, R. L. Shinn, and A. L.
Hart, for Respondents.

PLUMMER, J., *pro tem.*—On the first day of November,
1909, the plaintiff and intervener entered into an agreement
of lease whereby the plaintiff leased to the intervener for a
period of years fifteen acres of reclaimed land situate in the
county of Sacramento.   A portion of the land was covered
by an orchard, and all of it appears to have been susceptible
of cultivation and the raising of grain and vegetables.   The
lease contained the following provisions, which were the sub-
ject of consideration by the trial court in this action, to wit:
The lessee covenanted that he would annually, and at the
proper seasons, in a husbandlike manner, properly prepare

and render fit for cultivation all of said tract, etc., and tend and cultivate the same in a first-class, husbandlike manner, and harvest all crops, etc.; that he would keep all the edges of the ditches, sloughs, roads or any other lines of boundaries of the land clean of weeds, brush, etc.; that the lessee might sell the crops raised on the leased premises, but that the returns for the same should be made directly to the lessor, upon receipt of which the lessor would place the said amounts to the credit of the account of the lessee; that in case of any violation of the conditions of the lease, the lessor at his option might terminate the same, and re-enter and take immediate possession of the premises, and all crops growing thereon should thereupon belong to the lessor. For the purpose of securing proper performance by the lessee of the conditions of the lease, it was further provided that the lessee mortgage to the lessor all crops of every kind standing, growing, or being upon said premises, or that might during the term of the lease be planted or produced upon said premises, as security and indemnity to the lessor for the performance by the lessee of all and singular the covenants and conditions of the lease, and as security for all sums that might become due to the lessor as damages for the breach of any of the terms of the lease, or otherwise.

In accordance with the terms and provisions of said instrument the intervener took possession of the premises covered by the lease and continued in possession of the same until the month of November, 1914.

It appears that during the years preceding 1914 the lessee marketed his crops through the agency of the defendant, and that the defendant made returns directly to the plaintiff in this action, but that during the year 1914 made returns directly to Tin San, save and except that sufficient money was turned over to plaintiff to cover the amount specified as the rent to be paid annually under the terms of said lease.

At the conclusion of the cropping season the plaintiff made demand on the defendant for a return of all of the moneys received by it on account of the produce raised by Tin San on the leased premises, and marketed through the agency of the defendant. At about the same time, or before the then balance in the hands of the defendant, being the sum of one thousand two hundred dollars, had been paid to Tin San,

the intervener, Tin San, also made demand upon the defendant for the money then in its hands, claiming that there was nothing due from him to the plaintiff, and that the money in the hands of the defendant, save and except the sum of $287, which the intervener admitted was due and owing to the plaintiff, and which sum, upon the authorization of the intervener, was by the defendant paid to the plaintiff, leaving in the hands of the defendant the sum of $913, belonged to him.

The plaintiff began an action for the recovery of all sums arising from the crop raised by the intervener on the leased premises during the year 1914 and marketed through the agency of the defendant, and for an accounting, claiming that he was entitled to have the entire sum paid to him under the provisions of the lease, irrespective of his right to retain the same after its reception; that the ownership of the money was a matter between the plaintiff and Tin San, and that the plaintiff had a right to handle all of the proceeds and make return to Tin San of whatever the plaintiff considered to be due him after deducting all claims made thereon by the plaintiff.

The defendant made answer that plaintiff had informed the defendant that the sum of one thousand two hundred dollars only was the amount due from Tin San to the plaintiff; that the provisions of the lease for making returns to the plaintiff was one only for security, and that it did not vest the ownership of the proceeds of the crop in the plaintiff; brought the money into court and asked that Tin San be made a party to the action, and the ownership of the money determined.

Tin San thereupon filed a complaint in intervention, claiming that there was nothing due from him to the plaintiff, that the sum of $913 paid into court by the defendant belonged to him, and asked judgment therefor. Judgment went for defendant and intervener, from which judgment plaintiff appeals.

While numerous points are raised, only two questions are really involved in this action and require consideration in the determination of this appeal. The first point made for reversal by the appellant is that under the terms of the lease he was entitled to all moneys received by the defendant on ac-

count of produce raised on said premises and sold through defendant's agency by the intervener. That the provisions of the lease gave him an absolute right to, and an ownership in, said proceeds. Is this contention sound?

By the provisions of the lease it will be observed that the lessee had a right to sell all crops raised on the leased land, and that the return for the same should be made directly to the party of the first part. This is a covenant or condition inserted in the lease and assented to by the plaintiff and intervener, to which the defendant was not a party, but of which the defendant appears to have had ample notice. However, this condition in the lease does not by its terms, nor by any reasonable construction that can be placed thereon, actually invest the plaintiff with the ownership of the proceeds arising from the sale of the produce raised on the leased premises. The most that can be said for it is that it gave the plaintiff a right to handle the money, and place the amount so received to the credit of the party of the second part named in the lease. The last provision in the lease may also be considered in connection with this contention to determine its meaning, to wit: that portion of the lease which mortgages the crops raised on the leased premises as security for the performance by the lessee of the conditions and covenants contained in the lease.

The conclusion seems to us unescapable that if the clause in the paragraph in the lease providing that the returns of all sales should be made to the plaintiff, invested him with the ownership of such proceeds, that the mortgaging paragraph of the lease has no place in the instrument, because if the plaintiff or party of the first part in the lease retained ownership, there was nothing left for the party of the second part to mortgage. The two provisions of the lease must be read together, and when so read the making of the returns to the plaintiff, and the mortgaging by the intervener to the plaintiff of all the crops raised on the premises, evidences only an intent to secure the plaintiff and not to invest him with ownership in the proceeds. If this conclusion is correct, and the provisions of the lease were for the purpose of securing the plaintiff, and did not invest him with ownership, then even though the defendant had knowledge of the terms of the lease, the plaintiff suffered no damage by reason of the failure of the defendant, to pay over to plaintiff moneys which

did not belong to him, unless it be shown that at such period the intervener, Tin San, was indebted to plaintiff.

This brings us to the second question tendered for consideration. Was the intervener, Tin San, indebted to the plaintiff? The answer to this question involves the consideration of that portion of the lease as referred to herein, whereby it appears that the lessee agreed that at the proper season he would, in a husbandlike manner, properly prepare for and render fit for cultivation the leased premises, and tend and cultivate the same in the same manner, etc. Under this provision it is contended on the part of the appellant that it was incumbent upon Tin San to eradicate certain Johnson grass standing and growing upon the premises during the year 1914, and for the eradication of which the appellant made a charge considerably in excess of the amount remaining in the hands of the defendant. It may be stated that the plaintiff also made charges for rents, spraying material, and other accounts, aggregating the total sum of $2,029.56, judgment for which amount appellant claims he is entitled to against both the defendant and intervener. A long series of accounts between the plaintiff and intervener were submitted to the trial court, which accounts appear upon conflicting evidence to have been settled and determined by the trial court, and need not be considered save and except as to the charge made for the eradication of the Johnson grass. If it was incumbent upon the intervener to eradicate the Johnson grass, the judgment of the trial court should be reversed; if not incumbent upon him, then the judgment of the lower court should be affirmed. An examination of the transcript discloses abundant testimony, if believed by the trial court, to establish the fact that there was Johnson grass growing upon the leased premises as early as the year 1906. That it was in evidence during the years 1907, 1908, and 1909, prior to the month of November, when the intervener took possession. Whether the pernicious character of the Johnson grass was then fully understood does not change the fact of the conditions existing at the time of the execution of the lease. The lease expressly provided that the lessee should keep the edges of all ditches, sloughs, roads, lines or boundaries clean of weeds, brush, etc., which makes expressly applicable section 1656 of the Civil Code, which is: "All things that in law or usage are considered as incidental

to a contract, or as necessary to carry it into effect, are implied therefrom, unless some of them are expressly mentioned therein, when all other things of the same class are deemed to be excluded.''

Also section 1647 of the Civil Code: ''A contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates.''

The contract between the plaintiff and the intervener expressly mentions certain things which must be done in addition to the usual and ordinary cultivation of the premises. It does not appear from either the testimony or the findings of the court that the Johnson grass was in any of the places referred to by this provision of the lease, or that it entered into the contemplation of either the plaintiff or intervener at the time of its execution. It does not appear, either from the testimony or from the findings of the court, that the intervener, as lessee, failed or neglected to cultivate the demised premises in the manner usual or customary in the section of the country where the lands are situated, but it does appear that rather large and valuable crops were raised upon said premises during each and every year they were occupied by the lessee, including the year 1914. It does not appear that the plaintiff had made any special effort to eradicate the Johnson grass during the years 1907, 1908, and 1909, while it was known to be growing thereon, and before the intervener took possession.

The lease between the plaintiff and the intervener was executed by the plaintiff through the agency of his son, who testifies (Trans., fol. 257) that the Johnson grass appeared in 1907, which fact must not be lost sight of in determining whether the lease required the lessee to use any extraordinary means in the eradication of the pest not theretofore resorted to by the owner and not specifically mentioned.

It seems to us that the trial court was correct in holding that the lease did not require any extraordinary efforts on the part of the lessee, and that any expense made by the owner in 1914 to completely eradicate the Johnson grass must be borne by himself.

The contention of appellant that this was not a proper case for intervention on the part of Tin San requires no consideration further than to refer to section 387 of the Code of Civil Procedure. The intervention was made prior to the

trial of any issues of fact, before the cause had been set for trial, and does not appear to have materially, if at all, delayed the hearing. The authorities are too numerous to be mentioned, holding that an intervention so made is within time. The ownership of the money in dispute clearly gave the intervener a right to appear in the action, and the trial court properly so held.

Interest upon the unsettled account between the plaintiff and the intervener was properly denied. All the other items in the account appear to have been determined by the court upon conflicting testimony, and do not seem to us to require further consideration.

Being of the opinion that the plaintiff suffered no damage by reason of the failure of the defendant to turn over the money involved in this action by reason of the ownership thereof being vested in the intervener, and that the trial court correctly construed the various provisions of the lease, the judgment of the lower court should be, and the same is hereby, affirmed.

Chipman, P. J., and Burnett, J., concurred.