STATE BANK OF NEW SALEM, PLAINTIFF, *v.* SCHULTZE, APPELLANT; McCORMICK, TRUSTEE IN BANKRUPTCY, RESPONDENT.

(No. 4,780.)

(Submitted April 20, 1922.   Decided May 18, 1922.)

[209 Pac. 599.]

*Fraudulent Conveyances — Intervention — Failure to File Answer—Default Judgments—Judgments — Amendments — Appeal from Judgment—Time.*

Judgments—Amendment After Entry—Appeal from Judgment—Time.
1.   Where, in an action to set aside a fraudulent conveyance, an erroneous description of the land in the judgment was not corrected until some seventy days after its entry, the property rights of the defendant thus not becoming affected until after amendment, the rule that an order amending a judgment after entry is a special order after final judgment, and therefore appealable only within sixty days, does not apply, but the computation of time within which to perfect an appeal from the judgment dates from the time the amendment was made.

Intervention—Answer—Pleading.
2.   Where a complaint in intervention is adverse to both parties in which filed, both are considered as defendants as respects the intervener and they must plead to his complaint as defendants in an ordinary action.

Same—Rules of Pleading Applicable.
3.   The rules applicable to pleadings in general apply to pleadings in intervention.

Same—Extent of Rights of Intervener.
4.   While an intervener must accept the action in which he intervenes as he finds it at the time of intervention, his rights thereafter are as broad as those of the original parties to it.

Same—Failure to Answer—Default Judgment.
5.   Where defendant in an action to set aside a fraudulent conveyance failed to answer a complaint in intervention which injected an entirely new issue in the case which defendant could not have anticipated at the time of filing her answer in the case originally brought, judgment by default in favor of intervener was proper, her contention that, the allegations in the original complaint being similar to those in the complaint in intervention, her answer met every issue tendered and rendered a new answer unnecessary, being without merit.

---

2.   The law of intervention, see note in 123 **Am. St. Rep.** 280.

[63 Mont. 410.]

Judgments—Land Descriptions—Amendments—Power of District Court.
    6. Under its inherent power to amend *nunc pro tunc* a judgment
    so that it will express what was judicially determined at the
    hearing, the trial court may correct clerical mistakes in land descrip-
    tions, so long as the rights of strangers are not affected thereby.

*Appeal from District Court, Yellowstone County; Charles A. Taylor, Judge.*

ACTION by the State Bank of New Salem against Minnie Schultze and J. B. McCormick, Trustee in Bankruptcy, Intervener. From a judgment for Intervener McCormick, defendant Schultze appeals. Affirmed.

*Mr. George W. Pierson,* for Appellant, submitted a brief and argued the cause orally.

*Messrs. Nichols & Wilson,* for Respondent, submitted a brief; *Mr. Edmund Nichols* argued the cause orally.

MR. JUSTICE GALEN delivered the opinion of the court.

A rehearing was granted in this case, and in consequence a different view is entertained regarding the questions presented, though the result is the same in effect as to the appellant, Minnie Schultze. So as to avoid confusion and encumbrance of the record, the original opinion rendered herein May 18, 1922, is withdrawn and this one substituted.

It appears that the plaintiff, The State Bank of New Salem, a North Dakota corporation, brought suit against Max, Minnie and Fred C. R. Schultze, and one Oscar Goeschel, seeking recovery upon several promissory notes described, aggregating $11,940.67, and asking that decree be made adjudging that a conveyance of certain land described as section 34, township 2 north of range 29 east, made by the defendant Max Schultze and wife to the defendant Oscar Goeschel, and from the de-

6. Extent to which *nunc pro tunc* amendment is permissible, see note in Ann. Cas. 1915A, 522.
    Sufficiency of evidence to authorize *nunc pro tunc* amendment, see note in Ann. Cas. 1915D, 685, 692.

fendant Oscar Goeschel to the defendant Minnie Schultze, wife
of the defendant Max Schultze, be declared fraudulent and
void as against the plaintiff.  Appearance was made by answer
in this action by the defendants, Minnie Schultze and Oscar
Goeschel, wherein the indebtedness was admitted, and the fraud-
ulent character of the conveyance and insolvency of Max and
Fred Schultze denied.

Thereafter, J. V. McCormick made timely filing of his com-
plaint in intervention, as trustee in bankruptcy of Max Schultze,
wherein he alleged in part that this action was begun on the
29th of September, 1917, and that on the twenty-fourth day of
January, 1918, the defendant Max Schultze was adjudged a
bankrupt upon his voluntary petition filed in the United States
district court for the district of North Dakota.  Further, that
on the ―― day of ――, 1913, the defendant Max Schultze
purchased from the United States government at public land
sale four sections of land in Big Horn county, described; that
at the time of making the purchase he procured the issuance of
four certificates of sale having them "run to the following
named parties: Section 10, 1 north, 28, to Minnie Schultze, his
wife; section 34, 2 north, 29, to Fred C. R. Schultze, his son;
section 11, 1 north, 28 E., to himself."

The intervener then alleges: "VI. That thereafter as subse-
quent payments became due for the purchase of the above-de-
scribed lands, the defendant Max Schultze borrowed from the
defendant Oscar Goeschel sums of money aggregating about
$5,000, and as security for the money advanced by the said
Goeschel the said defendant Schultze procured the execution
and delivery to Goeschel, on November 30, 1914, of a deed to
section 34, 2 north, 29 east; on October 20, 1915, of a deed
to section 11, 1 north, 28 east; and upon the same date a deed
from Minnie Schultze to section 10, 1 north, 28 east.  That
each of the deeds above mentioned were given only as security
to the said Goeschel, and so accepted by him, and that the
same were in truth and in fact mortgages.

"V.   That thereafter the said Max Schultze sold the land in Big Horn county, described as section ——, township ——, range ——, then standing in the name of his son Fred C. R. Schultze, the deed therefor having been executed by the defendant Goeschel to the purchaser, but the proceeds thereof being retained by the said defendant Max Schultze.

"VI.   That the said Max Schultze became heavily involved, owing large amounts to his creditors, and was in fact insolvent, and for the purpose of hindering, delaying and defrauding his creditors the said defendant Max Schultze procured the execution, on the fifteenth day of September, 1917, of a deed from himself and wife, the defendant Minnie Schultze, to the defendant Oscar Goeschel, for section 11, 1 north, 28 east; and also of a deed from the defendant Minnie Schultze and himself to the defendant Oscar Goeschel for section 10, 1 north, 28 east, and thereafter, and on September 19, 1917, procured a deed from the said Goeschel to his wife, Minnie Schultze, of section 34, 2 north, 29 east. That the defendant thereby placed in the name of his wife the title to the said section 34, and in the defendant Goeschel the title to sections 10 and 11, and attempted to place beyond the reach of his creditors all of the land so purchased and owned by him.

"VII.   That the defendant Minnie Schultze gave no consideration whatever for the conveyance to her of the land above set forth, nor did she have any money, in fact, invested in any of the lands hereinbefore described; the purchase of said section 10 having been made nominally in her behalf, but in truth and in fact for the benefit of the defendant Max Schultze. That the said Minnie Schultze had knowledge of the insolvent condition of her said husband and the fraudulent intention and purpose on his part to hinder, delay and defraud his creditors, and accepted the title thereto with the intention and for the purpose of assisting the said defendant Max Schultze in so defrauding his creditors.

"VIII.   That the making of the aforesaid conveyances and the transfer of the title to section 34, 2 north, 29 east, to the

defendant Minnie Schultze did in fact defraud the creditors of the said Max Schultze, and intervener now alleges that the said Minnie Schultze holds the said title to said section 34, in trust of the benefit of her husband and his said creditors.

A decree is prayed adjudging that the conveyance executed to the defendant, Minnie Schultze, be declared fraudulent and void as against creditors of the defendant Max Schultze.

Thereafter it appears that the cause came on for hearing before the court without a jury, upon the complaint in intervention, the default of the defendants Max, Minnie and Fred C. R. Schultze, Oscar Goeschel, and of the plaintiff, having been entered for failure to answer the complaint in intervention. Decree was made and entered September 15, 1919, in favor of the intervener, wherein it is recited:

"The court further finds that the defendant Max Schultze was in fact the owner of section ten (10) in township one (1) north, range twenty-eight (28) east, and for the purpose of defrauding his creditors caused the same, by conveyance which he procured to be made, to be transferred to the defendant Minnie Schultze, his wife; that the said Minnie Schultze paid no consideration for the said land, and that she holds the same for the benefit of the said Max Schultze.

"The court further finds that this action was begun by the plaintiff on the twenty-ninth day of September, 1917, and that on the twenty-fourth day of January, 1918, the defendant Max Schultze was adjudicated a bankrupt upon his voluntary petition by the United States district court for the district of North Dakota.

"It is therefore hereby considered, adjudged and decreed by the court that the defendant Minnie Schultze, at the time of the bringing of this action, held the title to section ten (10), in township one (1) north, range twenty-eight (28) east in Yellowstone county, Montana, in trust for the benefit of her husband, the defendant Max Schultze, and that by reason of the adjudication in bankruptcy of the said Max Schultze the title to said real estate is held in trust by her for the benefit

of the creditors of the said Max Schultze, and that the convey-
ance made to her by the defendant Oscar Goeschel was made
for the purpose and with the intention of defrauding the
creditors of the said Max Schultze.

"It is further considered, adjudged and decreed that the
intervener J. V. McCormick, trustee in bankruptcy of Max
Schultze, bankrupt, is entitled to hold the said real estate as
against all of said defendants, and especially the defendant
Minnie Schultze, for the benefit of the creditors of Max
Schultze, bankrupt, and the said Minnie Schultze is hereby
ordered and directed to convey to the said J. V. McCormick
said section ten (10), township one (1) north, range twenty-
eight (28) east, in Yellowstone county, Montana, within thirty
days from this date, and upon her failure to make such con-
veyance, this decree shall be held and considered to be a con-
veyance and transfer of the legal title to said real estate from
the said Minnie Schultze and Max Schultze, her husband, to
the said J. V. McCormick, intervener."

This decree was signed by A. C. Spencer, District Judge.
Thereafter, on November 25, 1919, a "supplemental and
amended decree" was made and entered by Chas. A. Taylor,
District Judge, as follows:

"Be it remembered, that on this twenty-fifth day of Novem-
ber, 1919, the intervener herein advises the court that an error
exists in the description of the real estate in the original de-
cree herein, and now asks that the same be amended and cor-
rected to conform to the true and correct description as shown
by the petition in intervention and the proof offered upon the
trial.

"The court having listened to the proof and being now fully
advised, finds that an error was made in the description con-
tained in the decree as originally signed, and that the same
should now be corrected;

"It is therefore now considered, adjudged and decreed that
the original decree herein filed on the fifteenth day of Septem-

ber, 1919, be, and the same is hereby, amended in the following respect:

"That the words 'section ten (10), in township one (1) north, range twenty-eight (28) east,' be stricken out, and that the words 'section thirty-four (34), in township two (2) north, range twenty-nine (29) east,' be inserted in lieu thereof."

As appears from the notice of appeal, this appeal is taken "from the judgment made and entered in said cause in said court on the twenty-fifth day of November, 1919, * * * the judgment being designated 'supplemental and amended decree,' and reference is hereby particularly made to the portion of said judgment rendered and entered in said cause as of the fifteenth day of September, 1919." This appeal was attempted to be prosecuted to this court by the defendant Minnie Schultze, based upon this notice.

Three questions are presented decisive of the case, namely: 1. Is the appeal properly before this court? 2. Did appellant's answer to the original complaint on file in the action constitute an answer to the complaint in intervention, so far as it traverses the allegations thereof, thus precluding the entry of appellant's default and of judgment against her? 3. Was it within the province of the court to correct a clerical mistake in its judgment?

The record comprises the judgment-roll only, and it looks to us as though there have been omissions therefrom; but as no objection is made as to the sufficiency of the record, we offer none.

1. The notice of appeal appears to have been served and [1-4] filed November 22, 1920, sixty-seven days more than one year after the entry of the original decree (after September 15, 1919), although three days before the expiration of one year from the entry of the judgment, in the event computation is made from the date of entry of the "supplemental and amended decree" (November 25, 1919).

Section 7099 of the Revised Codes of 1907, in effect at the time this appeal was perfected, reads in part as follows: "An

appeal may be taken: 1. From a final judgment in an action or special proceeding * * * within one year after the entry of the judgment. * * * 3. From any special order made after final judgment * * * within sixty days * * * after the order or interlocutory judgment is made and entered in the minutes of the court filed with the clerk.'' A judgment is defined as a final determination of the rights of the parties. (Sec. 9313, Rev. Codes, 1921.)

The right of appeal is a privilege accorded, and in order for a person to obtain the benefits thereof, the statute must be complied with. A limitation is fixed by the law so as to bring litigation to an end, and define the limits of this court's jurisdiction. (*Gallagher* v. *Cornelius,* 23 Mont. 27, 57 Pac. 447; *Ramsey* v. *Burns,* 24 Mont. 234, 61 Pac. 129; *Jackway* v. *Hymer,* 42 Mont. 168, 111 Pac. 720; *Wilson* v. *Norris,* 43 Mont. 454, 117 Pac. 100.)

In the case of *Jackway* v. *Hymer, supra,* this court speaking through Mr. Justice Holloway, has laid down the hard-and-fast rule applicable, as follows: ''While the Constitution secures to a litigant the right of appeal, it does so only on condition that he complies with 'such regulations as may be prescribed by law.' (Const., Art. VIII, sec. 15.) The Codes having prescribed the time within which an appeal may be taken, a compliance with the statutory provisions is necessary to give this court jurisdiction of the appeal. (*Ogle* v. *Potter,* 24 Mont. 501, 62 Pac. 920; *Wright* v. *Mathews,* 28 Mont. 442, 72 Pac. 820; *Featherman* v. *Granite County,* 28 Mont. 462, 72 Pac. 972; *State ex rel. City of Walkerville* v. *District Court,* 29 Mont. 176, 74 Pac. 414; *Vreeland* v. *Edens,* 35 Mont. 413, 89 Pac. 735; *Hopkins* v. *Kitts,* 37 Mont. 26, 94 Pac. 201; *Kaufman* v. *Cooper,* 38 Mont. 6, 98 Pac. 504, 1135; *Reynolds* v. *Fitzpatrick,* 40 Mont. 593, 107 Pac. 902.)''

Question arises at once as to whether the original judgment, or the amendment thereof, is to be considered as the final judgment in this action, in making computation of the time allowed the appellant within which to perfect her appeal. No

attempt was made by her to appeal from the order directing the amendment of the judgment, the appeal having been taken from the judgment as amended. Should the amendatory decree be considered as a special order made after final judgment, within the meaning of the statute, then she is without standing in this court, not having appealed within sixty days from its entry. (*Nelson* v. *Donovan,* 14 Mont. 78, 35 Pac. 227; *Powell* v. *May,* 29 Mont. 71, 74 Pac. 80; *Jackway* v. *Hymer, supra.*) However, if the amendatory decree in this case is properly considered as the final judgment, as respects the right of appeal of the appellant Minnie Schultze, then the appeal was perfected within one year and is properly before us for review.

In this instance, we are constrained to the opinion that the right of appeal dated from the date of entry of the amendatory judgment, notwithstanding the fact that it is a general rule that an order amending a judgment already entered is considered as a special order made after final judgment. (*State ex rel. Boston & M. etc. Min. Co.* v. *District Court,* 32 Mont. 20, 79 Pac. 410.) At the time of entry of the original judgment, September 15, 1919, her property rights were thereby unaffected. The judgment was not such as to give her standing on appeal, because the record as then made disclosed that the lands (sec. 34) alleged to stand of record in her name, and as respects which the conveyance to her was sought to be set aside as fraudulent, were unaffected by the judgment of the court. It was not until the entry of the so-called "supplemental and amended decree" on November 25, 1919, that her property rights became involved; it was then, and not until then, that the original judgment became determinative of appellant's rights and final in character. We adhere to our views expressed with respect to the right of the court within a reasonable time to make correction of a manifest clerical error, so that the judgment shall correctly recite that which was in fact adjudicated; but where, as in this instance, the correction changes the judgment as respects the substantial

rights of the parties,. we think in fairness the computation of time allowed within which to perfect an appeal from the judgment (sec. 7099, Rev. Codes 1907) should date from the time of the entry of such amendment. Any other holding might in such a case lead to the grossest injustice.

2. The next question presented is as to whether it was proper [5] for the trial court to enter a default judgment against the appellant. As to parties who have appeared in an action, the statute directs service of a copy of the complaint in intervention upon their attorneys, and requires them to answer or demur thereto, the same as in the case of an original complaint. (Sec. 9088, Rev. Codes 1921.)

Counsel for the appellant argues that since the appellant, Minnie Schultze, had already appeared in the action and filed her answer to the plaintiff's complaint, she was not required to again specially answer the allegations of the complaint in intervention; that such answer should also be taken and considered as an answer to the complaint in intervention in so far as it traverses the allegations thereof. He contends that her answer met each and every issue tendered by the complaint in intervention, and that it was not necessary for her to repeat her denial of such allegations simply because a new party had been added, in this connection contending that a denial once made in refutation of an allegation, and a fact once alleged, is sufficient to make or tender an issue. That appellant's argument is fallacious clearly appears from the following considerations: Prior to the filing of the complaint in intervention, the issues presented were, (a) plaintiff's right of recovery against the defendant Max Schultze upon the promissory notes described, and (b) its rights to have the land alleged to have been fraudulently transferred to the appellant applied in satisfaction of the judgment. The complaint in intervention presented an entirely new issue, namely: whether the intervener as the successor in interest of Max Schultze, bankrupt, was entitled to the land involved for the benefit of the creditors of the estate of Max Schultze.

A new issue thus injected in the case required an answer on the part of the original parties to the action, and their failure to answer justified the entry of their default and of judgment in favor of the intervener after the introduction of satisfactory proof. While it is true that an intervener must accept the action pending as he finds it at the time of intervention (11 Ency. of Pl. & Pr., p. 509; *Emerson* v. *Fox*, 3 La. 178; *Cordill* v. *McCullough*, 20 La. Ann. 174; *Cahn* v. *Ford*, 42 La. Ann. 965, 8 South. 4; *Hanchett* v. *Gray*, 7 Tex. 549; *Standard I. Co.* y. *Lansing Wagon Works*, 58 Kan. 125, 48 Pac. 638; *Fletcher* v. *Bennett*, 36 Vt. 659), yet thereafter his rights are as broad as those of the other parties to the action.

An intervention may be, as in this case, adverse to both the plaintiff and defendants, in which instance all parties are considered as defendants as respects the intervener, and they must plead to the complaint in intervention as defendants in an ordinary action. (*Wall* v. *Mines*, 130 Cal. 27, 44, 62 Pac. 386; *Clapp & Co.* v. *Phelps & Co.*, 19 La. Ann. 461, 92 Am. Dec. 545.) "The rules applicable to pleadings in general apply with equal force to pleadings in intervention." (*Hadsall* v. *Case*, 15 Cal. App. 451, 115 Pac. 330; Kerr's Pl. & Pr., sec. 670.) From a reading of the statute, it was clearly the legislative intent that the ordinary rules of pleading shall apply to a complaint in intervention; for after making provisions for the service thereof, it requires that parties to the original action may answer or demur to the intervener's complaint as if it were an original complaint.

The answer to the original complaint on file could in no manner be considered as an answer to the allegations of the complaint in intervention. Although the allegations contained in the original complaint were similar to those contained in the complaint in intervention, yet the appellant was not relieved from the necessity of making specific answer to the complaint in intervention. Upon the filing of the complaint in intervention, the intervener became in truth and in fact the plaintiff in the case as against both the original plaintiff and all of the de-

fendants. It was not filed until nearly four months after appellant's answer to the original complaint, and was directed alone to the complaint at a time when an intervention was not, and could not have been, contemplated. She could not antici-
pate that intervention would be made in the action, nor the allegations to be made in the complaint in intervention; and even though she were to do so, her answer on file made to the complaint could in no sense be considered as serving the purpose of an answer to a complaint in intervention subsequently filed. The language of the statute with respect to parties to the action who have appeared, after service upon their attorneys, permitting them to answer or demur to the complaint in intervention, the same as if it were an original complaint, makes it plain that the general rules of pleading are applicable. The sufficiency of the complaint in intervention may be tested to the same extent and in the same manner as other pleadings; and any of the parties wishing to controvert any of the allegations of the complaint in intervention must do so by answer, and failing in this, the allegations not denied must be taken as admitted. (20 R. C. L. 691, 692; 11 Ency. Pl. & Pr., p. 508.) Though leave to intervene is granted *ex parte*, yet as the matters alleged may be ground of affirmative relief against the parties to the action, it is clear that there should be some step taken by the intervener answering the purpose of service of process, so that they shall be prepared to answer, and if necessary, disprove the allegations of the complaint in intervention. The record is silent as to whether the intervener applied for and was granted leave of court to file his complaint in intervention, and also as to whether or not an order was at that time or subsequently made by the court requiring the parties to the original action to appear and answer to the complaint in intervention within a specified time, which we believe to be the proper practice; however, no error is predicated thereon nor argument presented with respect thereto, and we must and do assume that the proceedings were regular. We think the statute means just what it says: when service is

made upon the attorneys for parties to the action, they must "answer or demur to the complaint in intervention" as if it were an original complaint—otherwise judgment will be taken against them by default.

3. As to the power of the court to enter the "supplemental [6] and amended decree," we are of opinion that in case of clerical errors, it is within the inherent power of the court to so amend its judgment that it will express that which was actually judicially determined at the hearing. (*Power & Bro.* v. *Turner,* 37 Mont. 521, 97 Pac. 950; *State ex rel. McHatton* v. *Disrict Court,* 55 Mont. 324, 176 Pac. 608. See, also, exhaustive notes in 10 A. L. R. 526.)

And among the errors in judgments which may be corrected *nunc pro tunc* are clerical mistakes in land descriptions, so long as the rights of strangers are not affected; such mistakes being viewed as clerical in character only.

While appellant made timely appeal from the judgment, as it appears that she was in default, the judgment is affirmed. *Remittitur* will issue forthwith.

*Affirmed.*

ASSOCIATE JUSTICES FARR, COOPER and HOLLOWAY concur.