(No. 6181. April 21, 1936.)

C. E. ANDERSON, Respondent, v. H. K. FERGUSON, MAUD FERGUSON and CLIFFORD FERGUSON, Respondents, and KENNETH FERGUSON, Intervener and Appellant.

[57 Pac. (2d) 325.]

S. Ben Dunlap, for Appellant.

R. B. Scatterday and Stewart S. Maxey, for Respondent Anderson.

AILSHIE, J.—This is an appeal from a judgment dismissing appellant's complaint in intervention filed in the trial court. The judgment of dismissal was predicated on an

order sustaining the demurrer to the complaint on the ground that appellant's claim was barred by the statute of limitations (by both secs. 5–218 and 5–224, I. C. A.). The action in which appellant sought to intervene was originally commenced by respondent C. E. Anderson against H. K. Ferguson, Maud M. Ferguson and Clifford Ferguson, which action was instituted on October 24, 1928. At the time of the commencement of the action an attachment was issued and was levied· upon "an undivided one-half interest in 62 head of Duroc Jersey hogs," on the 26th day of October, 1928. At the time of the levy appellant served written notice on the sheriff that he was an owner of an undivided one-half interest in these hogs. It appears that the plaintiff Anderson immediately executed and delivered to the sheriff an indemnity bond and the sheriff retained possession of the hogs.

It seems to have been admitted by all parties that the other undivided half interest in these hogs belonged to one Sylvester Hill. Thereafter on November 7th the attorneys for the respective parties (except the appellant) entered into the following stipulation:

"It is hereby stipulated by and between R. A. Russel attorney for the plaintiff herein and Stone & Jackson, attorneys for the defendants herein, that the hogs attached in said action in which Sylvester Hill is the owner of an undivided one-half interest, are to be sold by the said Sylvester Hill at such time or times as he believes said hogs to be fit for market, and that one-half of the amount received from the sale of said hogs is to be turned over to the Clerk of the District court to be held by her until a final decision of said case, when the money is to be turned over to the party the court decides is entitled to the same.

"It is hereby understood that nothing in this stipulation is to interfere with any of the rights of Kenneth Ferguson who claims a third party interest in said property.

"Dated this 7th day of November, 1928."

Immediately following the making of the foregoing stipulation the hogs were sold by Hill, and one-half of the proceeds, amounting to $447.85, was deposited with the clerk of the court in accordance with the terms of the stipulation. The case alternately slumbered and revived with intermittent

motions and demurrers until October 27, 1930, at which time the plaintiff procured an order permitting him to file a second amended complaint against H. K. Ferguson and Maud M. Ferguson and to drop the defendant, Clifford Ferguson, from the case. So far as the record shows, Kenneth Ferguson never prosecuted any action against the sheriff in replevin of this property nor for conversion of the property. It is clear, however, that he rather elected to pursue the funds realized from the sale of the property under the stipulation entered into as above set out. Accordingly on December 6, 1932, while the main action was still pending appellant presented and was permitted to file his complaint in intervention.

Now, for the purpose of determining whether or not appellant's complaint in intervention was sufficient to entitle him to be heard, we will examine the allegations of the petition. They are as follows:

I.

"That this action was commenced by plaintiff to recover judgment against defendants, H. K. Ferguson and Maud M. Ferguson, husband and wife and Clifford Ferguson for money alleged to be due on two certain promissory notes which are set out and described in the complaint; that thereafter, an attachment was issued in this cause and on Oct. 26, 1928, a levy thereof was made upon certain hogs as the property of the defendants, H. K. Ferguson, and Maud M. Ferguson, husband and wife and Clifford Ferguson; that thereafter, on or about October 2, 1930, plaintiff, C. E. Anderson moved to dismiss this action against the defendant, Clifford Ferguson and for leave to file an amended complaint against H. K. Ferguson and Maud M. Ferguson, husband and wife; that thereafter, an order dismissing this action against the defendant, Clifford Ferguson and for the filing of the said amended complaint, was duly and regularly entered and made herein by the court.

II.

"That on or about the 1st day of January, 1927, one G. Clifford Ferguson, who was one of the defendants herein, entered into a written agreement with one Sylvester Hill, for the purpose of carrying on general farming operations upon a certain ranch then owned by said Hill in Canyon

County, Idaho; that a copy of said partnership agreement is hereunto attached marked 'Exhibit A' and is by this reference made a part hereof. That the said G. Clifford Ferguson and the said Clifford Ferguson, formerly defendant herein, are one and the same person.

### III.

"That on or about the 24th day of October, 1928, the said G. Clifford Ferguson was largely indebted to intervener herein for money borrowed and for the purpose of making partial payment of said debt to intervener, said G. Clifford Ferguson by written instrument assigned, transferred, sold and delivered all of his right, title and interest in the said agreement of partnership with said Sylvester Hill; that a copy of said written instrument of assignment, transfer and sale is hereto attached marked 'Exhibit B' and is by this reference made a part of this complaint in intervention.

### IV.

"That at the time of such assignment, transfer, sale and delivery by G. Clifford Ferguson to intervener herein of all said G. Clifford Ferguson's right, title and interest in and to the said partnership agreement and property of said G. Clifford Ferguson and Sylvester Hill, there was among other property owned by said partnership, sixty-two head of hogs which were nearly ready for market and that at said time said G. Clifford Ferguson was the owner of an undivided one-half interest therein and that by the terms of said assignment, transfer and sale by said G. Clifford Ferguson of all his right, title and interest in and to the said partnership agreement and said partnership property, intervener became the owner of all the right, title and interest therein of the said G. Clifford Ferguson, including an undivided one-half interest in and to said sixty-two head of hogs and at said time took possession of said partnership hogs, and other property.

### V.

"That thereafter, the Sheriff of Canyon County, Idaho, levied a writ of attachment issued in this action on behalf of the plaintiff herein on an undivided one-half interest in and to said sixty-two head of hogs, as being the property of the said H. K. Ferguson and Maud M. Ferguson, and Clifford Ferguson, at said time defendants herein, and at said

time said Sheriff took said hogs into his possession; that on the day following the seizure of said hogs under said writ of attachment, this intervener served on the Sheriff of Canyon County, Idaho, a third party claim in writing duly verified by the oath of claimant setting out his title to said hogs, his right to the possession thereof and stating the grounds of such title; that the said Sheriff refused to deliver the possession of said hogs to intervener, an indemnity bond having been demanded by said Sheriff and furnished by plaintiff, C. E. Anderson.

### VI.

"That shortly thereafter, on motion and a showing to the court that the said hogs were ready for market the court entered an order herein directing the Sheriff of Canyon County to sell said hogs on three days public notice and to pay the proceeds into this court to abide the result of the action.

### VII.

"That thereafter, attorneys representing all parties in this action, entered into a stipulation to the effect that Sylvester Hill should sell the hogs so held under attachment and turn the proceeds of sale over to the Clerk of the District Court to be held until final decision and that then said proceeds should be turned over to the party the court should decide to be entitled thereto, a copy of said stipulation is hereto attached marked 'Exhibit C' and is by this reference made a part of this complaint; that thereafter, and pursuant to said stipulation the said Sylvester Hill sold the hogs so held under attachment as aforesaid and turned the proceeds of such sale amounting to Four Hundred Forty-seven and 85/100 Dollars ($447.85) over to the Clerk of this Court, in accordance with the aforesaid stipulation; and that the clerk of this court is still holding said proceeds of said sale in accordance therewith.

### VIII.

"The intervener alleges that the proceeds of said sale to-wit, the sum of Four Hundred Forty-seven and 85/100 Dollars ($447.85) is the property of this intervener and that an order should be made by this court directing the clerk thereof to turn over to this intervener said sum of Four Hundred Forty-seven and 85/100 Dollars ($447.85)."

Attached to the complaint is a copy of the partnership agreement, a copy of the inventory of property covered by the partnership agreement, assignment of Clifford Ferguson's interest to intervener and acceptance by Hill. The intervener prays to be adjudged the owner of the fund and that the court order and direct that it be turned over to him, and for general relief. For the purposes of this case we must accept the allegations of appellant's complaint or petition as true.

The complaint discloses that this is not an action in replevin against the sheriff who seized the property under the writ of attachment; neither is it an action for conversion, nor is it an action on contract. Intervener had the right to pursue his property by writ of replevin against the sheriff or to sue him for conversion. It appears from the complaint (paragraph VI) that shortly after the attachment and the receipt of an indemnity bond by the sheriff the trial court made an order (presumably under sec. 6-526, I. C. A.) for the sale of the hogs on a three days' public notice, and that the sheriff "pay the proceeds into this (the district) court to abide the result of the action." That order was followed by the stipulation between the attorneys for the respective parties hereinabove set out. This complaint on the part of the intervener simply alleges his ownership and right to the fund and asks the court to order the fund paid over to him as the party entitled thereto. Intervener filed his complaint in intervention "before the trial" in accordance with the statute. (Sec. 5-322, I. C. A.)

"The authorities are too numerous to be mentioned holding that an intervention so made is within time. The ownership of the money in dispute clearly gave the intervener a right to appear in the action, and the trial court properly so held." (*Van Loben Sels v. Producers' Fruit Co.*, 36 Cal. App. 201, 179 Pac. 403, 405.)

The money was paid into court some time in November, 1928. Plaintiff in intervention has chosen to claim the fund realized from the sale of this property and to avail himself of the remedy of having the court determine who is the rightful owner thereof and order the money turned over in accordance with the previous order of the court and stipulation of

the respective counsel. When he filed his application requesting the court to carry out the terms of its previous order and the stipulation of counsel, he was met with the reply that his claim was barred by the statute of limitations, although the same case had been pending all these years and the property out of which the fund was realized was seized on process issued in the same case and the money realized has been held in custody of the court during the pendency of the action.

The first question arising is: Does the statute of limitations run in such a case? If it does run, when did it start and in favor of whom does it run and who may plead it? The plaintiff Anderson has no title to this money. He merely claims an attachment lien and hopes to have the money subjected to execution on any judgment he may obtain. The defendants against whom he has procured judgment make no claim to the property. So we are here confronted with the anomaly of a plaintiff who has had an attachment suit pending in court for more than four years pleading the statute of limitations against the one who claims to be the owner of the money realized under order of court from a sale of the attached property. The sale of the property under order of court released the property sold from the attachment and the fund realized from the sale was paid into court and could only be reached or disbursed by an order of the court made in that case.

There is no provision of law by which lapse of time will either bar a claimant from asserting his right to such fund or prevent the court hearing his application and directing the money to be paid to the one rightly entitled thereto. (*Hafker v. Henry,* 5 App. Div. 258, 39 N. Y. Supp. 134.) It appears that it would be a travesty on justice to hold that under such circumstances the statute of limitations *ever began to run against the owner of the fund* thus held in custody of the court. It seems to be the prevailing rule that, ''When property is in the custody of the law, it is not liable to be sued for, and the statute of limitations does not run.'' (37 C. J., p. 1047, sec. 460; *Mattingly v. Boyd,* 20 How. 128, 15 L. ed. 845.)

The running of the statute of limitations does not pay the debt or satisfy the obligation. It is a mere privilege

personal only to the party liable and is only a statute of repose. (*Chemung Min. Co. v. Hanley*, 9 Ida. 786, 794, 77 Pac. 226; *Sterrett v. Sweeney*, 15 Ida. 416, 98 Pac. 418, 128 Am. St. 68, 20 L. R. A., N. S., 963; *McLeod v. Rogers*, 28 Ida. 412, 415, 154 Pac. 970; *Rogers v. Oregon-Washington R. & N. Co.*, 28 Ida. 609, 616, 156 Pac. 98.) For these reasons it is not applicable to a court clerk or registrar as the records of the court witness the manner and purpose of the fund coming into his custody.

■■ Execution does not run against *money* in custody of the court. The court has inherent power to control the fund in the hands of its clerk and to direct him as to the distribution thereof in the discharge of his official duties. (*Hornish v. Ringen Stove Co.*, 116 Iowa, 1, 89 N. W. 95, 97.) The clerk of the court was not holding the money as an individual, but merely as an officer of the court, and he certainly could not be sued for the money so held. (*Higgins v. Keyes*, 5 Cal. App. 482, 90 Pac. 972.)

"An order for payment of a fund out of court may be made on motion in the cause in which the fund was deposited, if there is no dispute as to who is entitled to the fund; or the person claiming the fund, or an interest therein, although not a party to the original cause, may be permitted to intervene and assert his claim.

"It has been generally held that any disposition of the fund must be in the proceedings in which it was deposited, and that *an independent suit against the official custodian or the depositary of the fund will not lie.*" (Italics ours.) (18 C. J., pp. 778, 779, sec. 52.)

■ Had intervener filed his petition immediately upon the deposit of the fund with the clerk, under the intervention statute he would not have had a right to a trial until the trial of the main case between plaintiff and defendants. Intervener takes the case as he finds it. (2 Bancroft's Code Prac. & Remedies, sec. 781, p. 1147; *State Bank of New Salem v. Schultze (McCormick, Intervener)*, 63 Mont. 410, 209 Pac. 599, 603; *Mathews v. Savings Union Bank & T. Co.*, 43 Cal. 45, 184 Pac. 418, 420; *McNeil v. Morgan*, 157 Cal. 373, 108 Pac. 69.)

It has been held by this court that a counterclaim or cross-complaint may be filed for damages caused on account of the wrongful issuance or levy of an attachment in the same case. According, however, to the contention made herein, such a cause of action for damages, even though arising out of the same case and after its commencement, would be barred unless "the counterclaim or cross-complaint" alleging such damages were filed within the period of the statute of limitations, although the case had been pending for a period exceeding the statute of limitations as in this case. (*Willman v. Friedman*, 4 Ida. 209, 38 Pac. 937, 95 Am. St. 59; *McCornick v. Friedman*, 9 Ida. 754, 763, 76 Pac. 762.)

There is another thing that appears from the complaint in intervention that is incompatible with the plea of the bar of the statute of limitations, and it is this: According to the complaint and exhibits attached, these hogs originally belonged to Sylvester Hill and Clifford Ferguson as copartners. They were tenants in common in the property, each owning a one-half interest therein. On October 24, 1928, Clifford Ferguson, being largely indebted to intervener and in payment thereof, sold and assigned his interest in the partnership to the intervener, and the partner Sylvester Hill consented to, approved and ratified the assignment. When Anderson commenced action on October 24th he made Clifford Ferguson a defendant and the attachment issued against him as well as against the other defendants. Three years later and after rulings on various demurrers, on October 27, 1930, the attorneys stipulated that a *second amended complaint might be filed, omitting therefrom Clifford Ferguson.* The stipulation is as follows:

"It is stipulated and agreed by and between the parties hereto that the above entitled action, in so far as the same affects the defendant, Clifford Ferguson, may be dismissed without prejudice, and that plaintiff may file an amended complaint against the above named defendants, H. K. Ferguson and Maud M. Ferguson."

This second amended complaint omitted the cause of action that had previously been charged against Clifford Ferguson on a separate note executed by him alone. Incidentally, it let out the only defendant who had ever owned or asserted

any interest in the attached property. Intervener is the successor in interest of Clifford Ferguson and derived his title to the hogs through him. Clifford Ferguson was "dismissed" from the action "without prejudice" and the stipulation to that effect was signed by his attorney and also by plaintiff's attorney.

It appears from the record that after the demurrer to intervener's complaint was sustained and he was out of court, the case against H. K. Ferguson and Maud Ferguson was tried December 8, 1932, and judgment was entered January 6, 1933, in favor of the plaintiff and against the defendants last named in the sum of $464.18. On the same date and apparently at the same time the court entered the following order:

"It appearing to the court that the clerk of the above entitled court is holding a sum of money in the above entitled action which is claimed by the above named intervener, which claim has not as yet been passed upon by the court;

"Now, therefore, it is ordered, that no execution shall issue upon the judgment heretofore entered in favor of plaintiff and against the defendant, H. K. Ferguson, in the sum of $464.18 and costs, against the above mentioned moneys held by the clerk and claimed by Kenneth Ferguson, until the further order of this court.

"Dated January 6th, 1933."

So it will be seen that the money is still being held by the clerk of the court and that no order has ever been entered declaring the title or ownership therein or to whom the money should be paid. Nevertheless, intervener, the only person claiming title to the property, is turned out of court.

Intervention is not a common-law remedy. It has been said that the "practice of allowing intervention" rests "on a combination of the principles of the ecclesiastical and civil law" and that it should be decided "under the principles of equity practice." (*Potlatch Lumber Co. v. Runkel,* 16 Ida. 192, 200, 101 Pac. 396, 18 Ann. Cas. 591, 23 L. R. A., N. S., 536; *Pool v. Sanford,* 52 Tex. 621.)

It has been contended that the sole question confronting the court is whether or not intervener's complaint in intervention was timely made. It seems that the simple and

logical answer to this inquiry is that it was made "before the trial" as provided by the statute (sec. 5–322) and was therefore "timely made."

On the foregoing statement of fact and the law as we see it, it seems clear that the court should have overruled the demurrer to the complaint in intervention and have heard the evidence of the respective parties as to the ownership and title to the fund being held in the custody of the court. If it belonged to intervener the court should have ordered it turned over to him. If it belonged to H. K. Ferguson and Maud Ferguson, the defendants, or either of them, then the court should have entered an order authorizing it to be applied toward the payment of the judgment in favor of the plaintiff Anderson.

It is clear that plaintiff has no attachment lien against Clifford Ferguson and that the latter is no longer in the case. The *only claimants* to the fund are *plaintiff as an attaching creditor* of H. K. Ferguson and Maud Ferguson (who make no claim to the property) and the intervener who claims to be the absolute owner thereof.

The judgment is reversed and the cause is remanded with direction to the trial court to overrule the demurrer and reinstate appellant's complaint in intervention and take further proceedings in conformity with the views herein expressed. Costs awarded in favor of appellant.

Budge and Holden, JJ., concur.

GIVENS, C. J., Dissenting.—The sole question confronting this court is whether or not intervener's complaint in intervention was timely made.

I. C. A., section 5–322, provides:

"Any person may, before the trial, intervene in an action or proceeding, who has an interest in the matter in litigation, in the success of either of the parties, or an interest against both. An intervention takes place when a third person is permitted to become a party to an action or proceeding between other persons, either by joining the plaintiff in claiming what is sought by the complaint, or by uniting with the defendant in resisting the claims of the plaintiff, or by *de-*

*manding any thing adversely to both the plaintiff and the defendant,* and is made by complaint, setting forth the grounds upon which the intervention rests, filed by leave of the court, and served upon the attorneys of the parties who have appeared, who may answer or demur to the same within twenty days after such service *as if it were an original complaint;* and the court may order summons to be issued and served upon the parties to the action or proceeding who have not appeared." (Italics herein.)

Intervener has not attempted to show any community of interest or privity of estate with the respondent's cause of action because his alleged title came through Clifford Ferguson, who is no longer a party to the attachment suit, but has stated a complete and distinct cause of action on his own behalf which arose from the attachment of his alleged undivided one-half interest in sixty-two hogs. (*Havird v. Lung,* 19 Ida. 790, 115 Pac. 930; *Common School Dist. No. 18 v. Twin Falls Bank & T. Co.,* 52 Ida. 200, 12 Pac. (2d) 774.)

More than four years have elapsed from bo⁺h' the time of attachment and the time of the third party demand. The statute of limitations for claim and delivery is three years, I. C. A., sec. 5–218, and for relief not specifically provided for, four years, I. C. A., sec. 5–224, so even if this is not an action in claim and delivery not governed by sec. 5–218, *supra,* but by sec. 5–224, *supra,* the statutory period had expired before the complaint in intervention was filed. Appellant argues the bringing of the attachment suit inures to the benefit of the intervener so far as the running of the limitation statute is concerned, but we find upon an examination of the cases cited by him that the original suit inures to the benefit of the intervener *only* when there is a community of interest between the intervener and a litigant of the first suit. This rule is apparently the weight of authority. (37 C. J. 1064, sec. 499, note 65, and cases there cited.) And this court held in *Potlatch Lumber Co. v. Runkel,* 16 Ida. 192, at page 199, 101 Pac. 396, 18 Ann. Cas. 591, 23 L. R. A., N. S., 536, that an intervener claiming property attached:

" . . . . is in no respect interested in the question as to whether the defendant is indebted to the plaintiff or not. The interest of the intervenor here is to show that neither

plaintiff nor defendant has any interest in this property. In fact, she would not be permitted to interpose a defense personal to the defendant and in the result of which she could have no interest one way or the other.''

The only conclusion deducible from this statement is that the court considered the intervener's cause of action was entirely separate and apart from the main controversy and that there is not such community of interest between the intervener and the plaintiff or defendant that the institution of the main cause of action tolls the statute as to the third party's claim. While the authorities cited by appellant hold that an intervener coming in under a statute similar to our own may intervene ''before trial,'' none of them pass directly upon the point involved herein, that is, where the bar of the statute has been raised against an intervener who has not joined the cause of either the plaintiff or the defendant, but has elected to stand on an entirely separate cause of action. Since appellant has not successfully shown by what exception to the statute of limitations he is entitled to recover, we must then construe his rights under the general principles of practice governing new parties. An amendment bringing in new parties does not affect the time of bringing the action as to the plaintiff and the defendant, but the action is commenced as to the new party when he is made a party, except where the addition is as a joint plaintiff, or assignee of the plaintiff who is a real party in interest. (1 C. J. 1160, sec. 414.) Appellant does not qualify under this exception. In the case of *Denton v. Detweiler*, 48 Ida. 369, 282 Pac. 82, the court held that a cross-complaint against an intervener if treated as an amendment to the complaint, set up a new cause of action and the cross-action was barred by the statute of limitations, and further that a counterclaim is subject to the operation of the statute of limitations.

The stipulation does not avail appellant because he was not a party thereto. (60 C. J. 68, sec. 50; *Farmers' etc. Sav. Bank v. Hudson,* 62 Utah, 131, 218 Pac. 93.) It applied only to the payment of the money into court, and was not an appearance. (*Washington County Land & Development Co. v. Weiser Nat. Bank,* 26 Ida. 717, 146 Pac. 116.) In other words, the rights of the parties were to be determined as

though the hogs had not been sold. Taking that situation as our premise, still the action would in effect be for claim and delivery and the statute of limitations be equally operative.

The third party claim of appellant made on the sheriff is not a pleading (*McGaffey Canning Co. v. Bank of America*, (Cal. App.) 284 Pac. 977 (on reargument, *McCaffey C. Co. v. Bank of America*, 109 Cal. App. 415, 294 Pac. 45); *McDonald v. Stephens*, 204 Ala. 359, 85 So. 746); nor does it conform to the requirements of pleadings as set out in I. C. A., sec. 5–601 et seq., so it cannot be said that appellant was a party to the action until his complaint in intervention was filed. The filing of the claim was not an appearance in court. Appearances must be made in conformity with statutes. (4 C. J., 1329, sec. 23.)

Intervener contends that Anderson could not question intervener's right to the hogs because he acquired by the attachment only the rights H. K. Ferguson had, and that H. K. Ferguson had no rights to or interest in the hogs. That, however, was the precise issue to be determined and Anderson by reason of his attachment, the third party claim on the property which cast a cloud on the title to the property, and because of at least Anderson's contingent liability in connection with the bond given the sheriff to indemnify him for damages arising from holding the property in his possession after appellant's demand, had sufficient standing in the litigation to raise the bar of the statute.

In *Mendini v. Milner*, 47 Ida. 439, 276 Pac. 313, the court said:

"The statute of limitations is general, is to be liberally construed and *must* be applied in all cases where an exception is not *specifically* made. (*Vandall v. Teague*, 142 Cal. 471, 76 Pac. 35.) Statutes creating exemptions are to be strictly construed and will not be extended by implication." (Italics herein.)

I. C. A., sec. 5–322, *supra*, does not purport to be an exception to the statute of limitations merely because it states "before the trial." It is merely a statute directing the means by which a party may enter litigation under a stated set of facts, and relates to "Intervention" as the title of

the section suggests, as a section under Title V, Chapter 3, dealing with "Parties to Action"—not exceptions to the statute of limitations. By authority of *Mendini v. Milner, supra,* then, no exception having been *specifically* made, the statute of limitations *must* be applied. (I. C. A., sec. 5–201.)

The statutes have given remedies for just such circumstances as intervener was placed in here, and in order to secure relief he must pursue his remedies with the same diligence that he would if there were not other parties litigant; or if there is a delay such as there was in the case at bar, it must be justified by showing that the party seeking redress comes within an exception to the running of the statute of limitations. After a careful examination of the authorities cited by appellant we cannot find where the intervener has brought himself within an exemption of the statute, and we must find that intervener has slept on his right too long, and now has lost his remedy.

It appearing on the face of the complaint in intervention that the cause of action was barred by the statute of limitations, *supra,* the complaint was properly attacked by demurrer and the demurrer properly sustained in the court below.

The judgment should be affirmed.

Morgan, J., concurs in this dissent.